UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TRAVIS H.,                              )
                                        )
        Plaintiff                       )
                                        )
v.                                      )        1:19-cv-00374-NT
                                        )
ANDREW M. SAUL, Commissioner of         )
Social Security,                        )
                                        )
        Defendant                       )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity.  Defendant, therefore, denied Plaintiff's request for disability benefits.  Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the February 21, 2019 decision of the Administrative Law Judge.  (ALJ Decision, ECF No. 9-2).[1]  The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of a right shoulder rotator cuff tear (post-repair status); degenerative disc disease of the lumbar spine; degenerative joint disease of the right ankle; Charcot deformity of the right foot; bilateral pes planus; obstructive sleep apnea; and obesity. (R. 27.) The ALJ further found that as the result of the impairments, Plaintiff has a residual functional capacity (RFC) to perform light work, except Plaintiff is limited to two hours of standing or walking in an eight-hour workday, and he must change position for three to five minutes each hour; he can occasionally push and pull, but cannot operate foot controls with his right lower extremity; he can frequently balance and can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, but cannot climb ladders, ropes or scaffolds and cannot tolerate exposure to unprotected heights or slippery surfaces. (R. 30.)

The ALJ determined that Plaintiff's past relevant work is a composite job of inventory clerk and janitor, which he is unable to perform because it exceeds his current RFC.[2] (R. 37.) Considering Plaintiff's age, education, work experience, and RFC, and relying in part on the testimony of a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the jobs of office clerk, file clerk and sorter. (R. 37-38.)[3]

---

[2] Because the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, for step 5 suggest that Plaintiff is "not disabled" regardless of the presence of transferable job skills, the ALJ found that the existence of transferable job skills was immaterial to the step 5 inquiry. (R. 37.)

[3] On February 27, 2020, Defendant notified Plaintiff that Plaintiff's subsequent application for SSI

**STANDARD OF REVIEW**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff contends that the ALJ erred when he (1) failed to assess properly the impact of Plaintiff's standing/walking limitation in concluding that Plaintiff was capable of performing light work, (2) failed to consider properly the impact of Plaintiff's standing/walking limitation on the lift/carry requirements for light work, (3) determined that Plaintiff was able to perform two semi-skilled jobs (office clerk and file clerk) in the absence of testimony from the vocational expert regarding transferable skills, and (4) excluded the post-hearing affidavit of Plaintiff's vocational expert, David Meuse.

---

disability benefits had been granted.  (ECF 17-1.)  Plaintiff was determined to be disabled as of August 2019.  (*Id.*)

Plaintiff argues that the ALJ's finding that Plaintiff has the capacity to perform light work is inconsistent with the further finding that Plaintiff is limited to two hours of standing or walking in an eight-hour workday and must change position from three to five minutes each hour.  Because Plaintiff was 50 years old as of the alleged onset date, a limitation to sedentary work would ordinarily direct a finding of disabled under the Medical–Vocational Guidelines, 20 C.F.R. Pt. 404, Sbpt. P, App. 2 (the "Grid").

At step 5 of the evaluation process, the Commissioner has the burden to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Grid, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings.  *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982).

According to Defendant's regulations, the need to stand and walk is "the primary difference between sedentary and most light jobs."  SSR 83-10, 1983 WL 31251, at *5. "Relatively few unskilled light jobs are performed in a seated position."  *Id.*  However, some jobs that qualify as light rather than sedentary require or allow the employee to be seated most of the time.  Such jobs often involve pushing and pulling controls, which entails "greater exertion than in sedentary work."  *Id.*  Sedentary work, in turn, involves "lifting no more than 10 pounds at a time."  *Id.*

The Social Security regulations do not require that a claimant be able to perform the

4

full range of work within any one exertional category, and when an ALJ determines that a claimant has a reduced exertional capacity, the regulations advise the ALJ to use a vocational expert to determine the impact the reduced exertional capacity has on the occupational base.  SSR 83-12, 1983 WL 31253.  The Supreme Court recently noted that when offering such testimony, vocational experts "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152-53 (2019) (quoting SSR 00-4p, 65 Fed. Reg. 75760 (2000)).  The Court further observed that the sufficiency of the evidence threshold necessary to support an ALJ's factual determinations, including the assessment of vocational expert testimony, "is not high."  *Biestek*, 139 S. Ct. at 1154.

The vocational expert here testified that due to the limitations in standing and walking included in Plaintiff's RFC, as well as Plaintiff's need to change position, "[t]here would be a reduction of numbers by one half" of the number of available jobs for the office clerk position, to 250,000 nationally.  (R. 69.)  He also testified that the number of available jobs for the file clerk position is 40,000 nationally and the sorter position is 20,000 nationally, each having been halved to account for the same limitations.  (R. 70.)  Upon questioning by Plaintiff's counsel, the vocational expert testified that he based the job numbers on his "professional knowledge and experience, as well as … utilizing Job Browser Pro."  (*Id*.)  In overruling the Plaintiff's objection that the vocational expert's method for determining job numbers was not reliable, the ALJ stated that the vocational expert "has professional knowledge and experience in job placement."  (R. 38.)

SSR 00-4p "imposes an *affirmative obligation* on [ALJs] to (i) inquire whether there is any conflict between [VE] testimony and the [Dictionary of Occupational Titles (U.S. Dept. of Labor 4th ed., rev. 1991) (DOT)], (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012), *rec. dec. adopted*, 2012 WL 1415616 (D. Me. Apr. 24, 2012) (emphasis in original).

Plaintiff cites cases from the District Courts of Massachusetts and New Hampshire to support his contention that the vocational expert's testimony is not sufficient to support the ALJ's step 5 determination because Plaintiff's standing/walking limitation is generally inconsistent with light work.  (Statement of Errors, ECF No. 13, at 5.)  In *Saeed v. Berryhill*, cited by Plaintiff, the court explicitly stated that it did "not hold that a two-hour standing/walking limitation necessitates a[n] RFC of sedentary work, or that the mere inconsistency between such a standing/walking limitation and a lift/carry capacity requires a remand."  No. 16-cv-11928-ABD, 2018 WL 1243953, at *11 (D. Mass. Mar. 9, 2018). The court concluded "under the particular circumstances of [the] case," remand was necessary because the vocational expert had not "specifically addressed the availability of a sit/stand option" for one of the occupations the expert identified as available to the claimant.[4]  *Id.*

The position at issue in *Saeed* (usher), as defined in the DOT, normally involves a

---

[4] The "particular circumstances" identified by the court in *Saeed* included the need to ensure there was substantial evidence to support the claimant's exertional level, which could be outcome determinative given the claimant's age, a circumstance present here as well.  *Id.*

lot of standing and/or walking and, therefore, the court understandably required more from the vocational expert given the claimant's standing/walking limitations.[5]  Two of the three jobs identified by the vocational expert here are clerical - office clerk[6] and file clerk[7] - neither of which, according to the DOT definitions, appears to require significant time standing or walking for many of the potential duties of the positions; the sorter[8] position also does not require much standing or walking.

---

[5] An usher "[a]ssists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display." DOT 344.677-014, 1991 WL 672865.

[6] The DOT definition for the position provides that an office clerk performs

> any combination of following and similar clerical duties …: Writes, types, or enters information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying information from one record to another. Proofreads records or forms.  Counts, weighs, or measures material.  Sorts and files records.  Receives money from customers and deposits money in bank.  Addresses envelopes or packages by hand or with typewriter or addressograph machine.  Stuffs envelopes by hand or with envelope stuffing machine.  Answers telephone, conveys messages, and runs errands.  Stamps, sorts, and distributes mail.  Stamps or numbers forms by hand or machine.  Photocopies documents, using photocopier.

DOT 209.562-010, 1991 WL 671792.  Only a few of these potential duties appear to require standing and walking (e.g., running errands, distributing mail, photocopying documents).

[7] Under the DOT, a file clerk

[f]iles correspondence, cards, invoices, receipts, and other records in alphabetical or numerical order, or according to subject matter, or other system …, searches for and investigates information contained in files, inserts additional data on file records, completes reports, keeps files current, and supplies information from file data.  Classifies material when classification is not readily discernible ….  Disposes of obsolete files in accordance with established retirement schedule or legal requirements.  May copy records on photocopying or microfilming machines.  May type labels or reports.  May make calculations or use calculating machine to keep files current.  May be designated according to material filed.

DOT 206.367-014, 1991 WL 671732.  Again, the DOT reflects that a great deal of standing and/or walking does not appear to be a significant aspect of the job.

[8] A sorter "[s]orts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding …." DOT 222.687-014, 1991 WL 672131.

In *Beede v. Colvin*, another case cited by Plaintiff, the vocational expert testified that the claimant could perform three light-duty jobs: price marker, furniture rental consultant and laundry classifier.  No. 16-cv-010-JL, 2017 WL 414059, at *4 (D.N.H. Jan. 31, 2017).  The expert based her opinion that the proposed jobs could provide a sit/stand option as required by the claimant's RFC, which limited the claimant to standing and/or walking two hours per workday, on her "experience in working with employers, human resource representatives, corporation[s], … writing job analyses, … observing individuals in the work place, also asking questions for research and labor market surveys."  The court concluded the expert did not provide sufficient foundation for her opinion:

> Though the vocational expert outlined her experience, she offered no explanation for how or why (1) jobs listed as "light work" would be "primarily a seated-type position," or (2) these jobs in particular "would tolerate [the] mix of sitting and standing" described in the RFC.  Absent such evidence, the ALJ has not satisfied his obligation to "elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support" his determination [regarding whether the claimant] was disabled.

*Id.*

The ALJ in *Beede* specifically acknowledged that the vocational expert's testimony was inconsistent with the information contained in the DOT for the identified light-duty jobs.  *Id.*  The court's decision in *Beede* is understandable given that where a conflict or inconsistency exists between the opinion of a vocational expert and the occupational information provided by the DOT, an ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled."  SSR 00-4p, 2000 WL 1898704, at *2.

In *Ulitsch v. Comm'r Soc. Sec. Admin*., the claimant's RFC also was limited to two hours of standing and walking.  Civil No. 18-cv-694-JL, 2019 WL 4686776, at *2 (D.N.H. Sept. 26, 2019).  The vocational expert testified that the claimant could perform the light work jobs of price marker, laundry classifier, and ticket seller, and that "based upon [her] own personal experience, in writing job analyses or when observing jobs in a worksite," seating apparatus was available for those positions.  *Id*. at *4.  The court, while stating that it was not ruling that "'a two-hour standing/walking limitation necessitates a RFC of sedentary work, or that the mere inconsistency between such a standing/walking limitation' and the definition presented by SSA or the DOT requires a remand," (quoting *Saeed*, 2018 WL 1243953, at *11), nevertheless found that the vocational expert's testimony did not provide "substantial evidence addressing the impact of [the claimant's] two-hour standing/walking limitation on the occupational base" of these positions, and remanded the case.  *Id*. at *4-5.

This District, like the courts in *Saeed* and *Ulitsch*, has previously rejected the argument that there is a categorical conflict between the DOT and vocational expert testimony regarding the availability of a sit-stand option for any particular job.  *Gatlin v. Astrue*, No. 1:11-cv-106-DBH, 2012 WL 313601, at *3-4 (D. Me. Jan. 31, 2012) (citing *Wasilauskis v. Astrue*, No. 08-284-B-W, 2009 WL 861492, at *5 n.8 (D. Me. Mar. 30, 2009) ("The premise that there was an apparent inconsistency between the vocational expert's testimony and the DOT is, in this instance, incorrect.  The DOT does not address the subject of the need to alternate sitting and standing.").  Because SSR 00-4p requires an ALJ to inquire into conflicts between vocational expert testimony and the DOT "pertains

9

only to *apparent* conflicts, a claimant waives a claim of failure to identify and resolve [such] a conflict … unless he or she 'can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance[.]'" *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012) (quoting *Burton*, 2012 WL 1184425, at *4 n.3) (emphasis in original).   Possible duties listed in DOT job descriptions are not sufficient to generate an apparent conflict. *See, e.g., Alley v. Astrue*, No. 09-6360B-W, 2010 WL 4386516, at *7 ("rendering personal assistance" only one of a number of potential tasks of the job of housekeeper/cleaner, so no inconsistency with limitation of avoidance of frequent contact with the general public).   Here, there are no apparent conflicts between the DOT descriptions of the office clerk, file clerk and sorter positions and Plaintiff's RFC limitations on walking and standing; the ALJ specifically found that there was no such conflict. (R. 39.)   Remand based on the alleged conflict between the vocational expert's testimony on the DOT is thus not warranted.

The vocational expert's testimony regarding the suitability of the identified jobs, given Plaintiff's RFC, would constitute substantial evidence to support the ALJ's step 5 determination provided the record otherwise reflects a proper foundation for the expert's testimony.   Plaintiff argues that the vocational expert's reduction by fifty percent of the job numbers for each of the positions is an unsupported "guess" by the expert.   (SOE at 9.)

Defendant counters that this District has found similar testimony could serve as substantial evidence that specific jobs exist in significant numbers in the national economy.

10

Defendant cites *Decker v. Astrue*,[9] in which the vocational expert testified that, based on the plaintiff's specified limitations, he could perform 10 percent of the jobs available "under the General Clerk occupational umbrella grouping."  No. 09-641-P-S, 2010 WL 4412142, at *2 (D. Me. Oct. 31, 2010).  The plaintiff argued that the job percentage allocation was arbitrary and unsupported by any evidence, and that the vocational expert could not explain the process by which his numbers had been derived. *Id*. The Court disagreed, finding that the ALJ was entitled to rely on the vocational expert's numbers based on the expert's testimony that the job numbers proffered "were based on [the expert's] 30 years of experience and market surveys, as well as his explanation of how he reached his conclusions …."  *Id*. at *3 (citing *Bayliss v. Barnhart*, 427 F. 3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").

In *Purdy v. Colvin*, another case cited by Defendant, the Court stated that "it is sufficient to demonstrate that the vocational expert was relying on her professional experience and expertise to conclude that the underlying data was reliable and that she endorsed the numbers to which she testified."  No. 1:15-cv-330-JDL, 2016 WL 2770520, at *7 (D. Me. May 13, 2016), *aff'd sub nom*., 887 F.3d 7 (1st Cir. 2018).  The vocational expert testimony at issue in *Purdy* involved an explanation of how job numbers are generated by Job Browser Pro, not regarding the basis for a reduction in those numbers. *Id*.; *see also* 887 F.3d at 16 (Job Browser Pro "a reliable and practical basis of fact on which

---

[9] The reference to *Decker* was in the context of Defendant's discussion of *Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017 WL 2731308 (D. Me. June 25, 2017), in which the Court cited *Decker*.

analysis was performed, [with] a wide reputation for reliability.").

Defendant also cites *Pressey v. Berryhill*, where the vocational expert opined that the jobs numbers to which he testified were based on "his 'professional association resource with more than 38 years of experience' as it pertained to the impact on the job base of a sit/stand limitation." No. 2:16-cv-00425-JDL, 2017 WL 2731308, at *6 (D. Me. June 25, 2017). The ALJ determined that she was "'satisfied with [the VE's] qualifications as a certified rehabilitation counselor with more than 25 years' experience[,]' with 'an established background of personal observations, studies, supervision and consultations with his peers.'" *Id*. at *7. The Court found the ALJ's determination was supportable and affirmed the administrative decision. *Id*. at *8.

*Decker*, *Purdy*, and *Pressey* confirm that a well-established legal principle – that an expert's knowledge and experience are proper bases for the expert's opinion – applies to a vocational expert's opinion regarding the number of jobs available in the national economy. The issue in this case is whether the record reflects a sufficient foundation for the vocational expert's opinion that the stand/walk limitations reduce by one-half the available jobs in each job category identified by the expert.

Upon questioning by the ALJ, the vocational expert testified that to account for Plaintiff's limitations in standing and walking, he reduced by one-half the number of available jobs for office clerk, file clerk and sorter. The ALJ did not ask and the vocational expert did not offer in response to the ALJ's questions the bases of his opinions.[10] The

---

[10] The ALJ did confirm that the vocational expert's resume contained an accurate description of his qualifications and Plaintiff did not object to the expert's qualifications. (R. 67.) Whether an expert has the

testimonial foundation for the expert's opinions regarding the number of available jobs consists of the following:

> Q. (Plaintiff's counsel): Mr. Fosberg, what is the source of your job numbers?

> A. (Vocational expert): The source of my job numbers is based on my professional knowledge and experience, as well as using – utilizing Job Browser Pro.

(R. 70.)  The record also includes the expert's resume, which reflects that he began his work as a vocational rehabilitation consultant in 2016, approximately three years before he offered his testimony in this case. (R. 86.)

While *Decker, Purdy*, and *Pressey* establish that a vocational expert's opinion regarding the number of  jobs available in the national economy can be based on the expert's knowledge and experience, a mere reference to the expert's knowledge and experience, without at least some comment as to how the knowledge and experience inform the opinion, does not suffice in every case.  In this case, even assuming an adequate foundation to support the initial numbers for each job (i.e., before any reduction for the stand and walk limitations), the record lacks an adequate foundation for the expert's testimony regarding the reduction by one-half of the number of available jobs for each of the identified jobs.

For an ALJ's reliance on the testimony of a vocational expert or any expert to be supportable, the record must include a foundation for the opinion. Neither the expert's

---

requisite expertise to offer an opinion on a certain subject matter is a separate question from whether there is a proper evidentiary foundation for a specific opinion offered in a case.

testimony nor his experience as reflected by his resume includes a basis or explanation for the one-half reduction for each of the three proposed jobs.  The vocational expert did not discuss how he made the calculation for the reductions or how his experience informed his opinion regarding the reductions. The reduction by the same percentage for each of the jobs generates further questions as to the basis for the reductions and whether a separate assessment was made regarding the impact of the limitations on each of the job types. Under the circumstances, more than a mere reference to expert's "knowledge and experience" is necessary for a proper foundation for the expert's opinions.

Because the record lacks an adequate foundation for the vocational expert's opinion as to the number of jobs available in the national economy and because the ALJ relied upon the vocational expert to conclude that "work exists in significant numbers in the national economy" (R. 40), the ALJ's finding is not supportable. Remand, therefore, is appropriate.

### CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.[11]

### <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[11] Because I have determined that remand is warranted based on the lack of foundation for the vocational expert's testimony, I have not addressed Plaintiff's other claimed errors.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of September, 2020.